BOHAN, by guardian, vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

*April 13 — May 31, 1883.*

NONSUIT: *(1) Not matter of discretion: (2, 4) When not ordered.*
RAILROADS: NEGLIGENCE. *(3, 4) Pushing cars in front of locomotive.*

1. When a nonsuit is set aside by the court, by an order made at the same term and on the same record, no question of judicial discretion arises on an appeal from the order.
2. In an action for personal injuries caused by negligence, unless it is conclusively proved either that the defendant was not guilty of any negligence which caused the injuries, or that the plaintiff was

Bohan, by guardian, vs. Milwaukee, Lake Shore & Western R'y Co.

guilty of negligence which contributed thereto, a nonsuit should not be ordered.

3. It is not unlawful for railway companies to propel cars by pushing them in advance of the locomotive by which they are propelled when the exigencies of their business require it to be done. But if they do so under circumstances which increase the risks of injury to persons or property, they must give timely and suitable notice or warning, in some manner, of what they are doing.

4. The evidence in this case is *held* not to prove conclusively that the head-light on the locomotive was sufficient to enable the plaintiff, had he exercised proper care, to see three gravel cars which were being pushed in front of it and by one of which he was struck and injured while attempting to cross the railroad track in the night time. The questions of negligence and contributory negligence were, therefore, for the jury, and a nonsuit was improperly ordered. ORTON, J., dissents.

APPEAL from the Circuit Court for *Ozaukee* County.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant company. The railway of the defendant from Milwaukee passes north through the west portion of the city of Port Washington, crossing a highway leading into the city from the west. The depot of the company in Port Washington is located on the east side of the railway, a short distance north of the highway, and the depot platform extends south to the highway. On the evening of June 5, 1882, the plaintiff, who resides west of the railway and street crossing, started from the city for his home. When he reached the crossing, he went upon the depot platform, and remained there a short time conversing with some friends. He then left for home, and when crossing the west rail of the track was struck and injured by a gravel car, which was, with two others, being pushed by the locomotive attached to a regular train from the south, then due at the depot. This happened about ten o'clock in the evening, and is the injury complained of. The three gravel cars occupied a space of over one hundred feet on the track ahead of the locomotive. The plaintiff tes-

tified that as he was about to cross the track he looked south and saw the head-light of the locomotive, which he thought was about at a switch, admitted to be at least two hundred feet south of the point where plaintiff was struck. He further testified that he saw nothing on the track ahead of the locomotive. Several other witnesses testified that they each saw the head-light of the approaching train, but neither of them saw the gravel cars ahead of the locomotive until the moment the plaintiff was struck. These were platform cars, and the testimony tends to show that they had gravel upon them, but no light or other signal of their presence there. On the above testimony the circuit judge nonsuited the plaintiff, but subsequently, at the same term, made an order setting aside the nonsuit and granting a new trial. From that order the defendant company appealed.

For the appellant there was a brief by *Alfred L. Cary*, and oral argument by *Bradley G. Schley:* 1. Upon an appeal from an order setting aside a nonsuit, made upon the same record as that upon which the nonsuit was granted, no question of judicial discretion is presented. *Powell v. Mo. Pac. R'y Co.*, 76 Mo., 80; *Duffy v. C. & N. W. R'y Co.*, 34 Wis., 188; *Hunter v. Warner*, 1 id., 141; *Gardinier v. Otis*, 13 id., 460. 2. The light from the head-light dispensed with the necessity of any light or signal on the flat cars. Courts must take judicial notice of matters of common knowledge and experience. Pierce on Railroads, 315; *Wheelock v. B. & A. R. R. Co.*, 105 Mass., 203; *L. S. & M. S. R. R. Co. v. Miller*, 25 Mich., 274. 3. Plaintiff was a trespasser upon the track, as well as on the platform. Trespassers cannot recover except for wilfulness or wantonness. *Morgan v. Pennsylvania R. R. Co.*, 7 Fed. Rep., 78; 19 Blatch., 239; *Johnson v. B. & M. R. R. Co.*, 125 Mass., 85; *Morrissey v. Eastern R. R. Co.*, 126 id., 377; *P. & R. R. R. Co. v. Hummell*, 44 Pa. St., 375; *Van Schaick v. H. R. R. R. Co.*, 43 N. Y., 527. Had there been no cars in front of the locomotive, still it would

have been negligent for the plaintiff to attempt to cross as he did. *Continental Imp. Co. v. Stead*, 95 U. S., 161; *Black v. B., C. R. & M. R'y Co.*, 38 Iowa, 515; *Warner v. N. Y. C. R. R. Co.*, 44 N. Y., 465. See, also, *Cosgrove v. N. Y. C. & H. R. R. R. Co.*, 13 Hun, 329; *Hinckley v. C. C. R. R. Co.*, 120 Mass., 257; *Langan v. St. L., I. M. & S. R. R. Co.*, 5 Mo. App., 311; *Grows v. M. C. R. R. Co.*, 67 Me., 100; *Pakalinsky v. N. Y. C. & H. R. R. R. Co.*, 82 N. Y., 424; *Haas, Adm'r, v. C. & N. W. R'y Co.*, 41 Wis., 44; *C., R. I. & P. R. R. Co. v. Houston*, 95 U. S., 697; Pierce on Railroads, 345, note 9; *Harlan v. St. L., K. C. & N. R. R. Co.*, 64 Mo., 480; *C. & A. R. R. Co. v. Jacobs*, 63 Ill., 178.

*George W. Foster*, for the respondent.

Lyon, J. We agree with the learned counsel for the defendant that no question of judicial discretion is here involved. The only question presented by this appeal is, Was or was not the nonsuit properly granted? If it was, the order setting it aside and granting a new trial is erroneous and should be reversed; if it was not, the order should be affirmed. Unless it was conclusively proved, either that the defendant was not guilty of any negligence which caused the injury complained of, or that the plaintiff himself was guilty of negligence which contributed thereto, the nonsuit should not have been ordered. The question to be determined is, Were either of these propositions so established?

On the one hand, the failure of the defendant to place a light upon the forward gravel car, to indicate the presence of the gravel cars ahead of the locomotive, is alleged as negligence of the defendant. On the other hand, it is claimed that the head-light of the locomotive rendered those cars visible to persons at the street crossing, and that had the plaintiff used proper care when he saw the head-light he would have seen the gravel cars in advance of the locomotive. Had the locomotive been at the head of the moving train, it will

scarcely be claimed that the plaintiff was negligent in attempting to cross the track before it, for the proof shows that he had ample time in which to cross before the locomotive reached the crossing. At least, it could not be held, as a proposition of law, that his attempt so to cross the track was negligence. It would be for the jury to say whether it was or not. Had the plaintiff known that over one hundred feet of the track in advance of the approaching locomotive was occupied by the gravel cars, it seems clear that he would have been chargeable with negligence in attempting to cross the track ahead of the moving train; especially so when there is no pretense of the existence of any emergency which required him to cross before the train passed or stopped. If by the exercise of proper care and scrutiny the plaintiff would or might have seen the gravel cars, his failure to discover them was, in like manner, negligence. If the plaintiff is chargeable with negligence because he failed to see the gravel cars, he is so because the head-light sufficiently disclosed their presence. It is not in proof that cars are usually propelled in advance of regular trains,— presumably they are not, especially in the night-time,— and no means other than the head-light is suggested by which the plaintiff might have informed himself that such cars preceded the locomotive.

On the other hand, it is not unlawful for railway companies to propel cars by pushing them in advance of the locomotive by which they are propelled when the exigencies of their business require it to be done. If they do so under circumstances which increase the risks of injury to persons or property, the law places them under obligation to give timely and suitable notice or warning, in some manner, of what they are doing. In this case it does not appear that the gravel cars could be distinguished or their presence discovered by persons at the street crossing, when the plaintiff attempted to cross the track, unless by aid of the head-light.

If, therefore, the head-light did not disclose to persons at that point, using proper care and watchfulness, that the locomotive was preceded by the gravel cars, the defendant company was negligent in not furnishing some other and more effectual signal or notice of the fact. Hence, the case seems to turn upon the question of the sufficiency of the head-light to enable the plaintiff to discover the gravel cars by exercising due care and scrutiny. If it was sufficient, the plaintiff was negligent and the defendant was not. If it was not sufficient, the result is reversed — the defendant was negligent and the plaintiff was not.

All of the witnesses who testify on the subject say that they saw the head-light of the locomotive, but did not see the gravel cars which preceded it until the moment the plaintiff was struck. The gravel upon the cars probably gave to them, to some extent, the color or appearance of the road-bed; and this might have interfered with seeing the cars from the crossing readily. Besides, it is testified that the glare of the light had a tendency to obscure the vision of persons at that point. There was no structure upon the platforms of the cars to arrest observation. There is no evidence of the height of the head-light from the ground or from the top of the gravel on the cars. We merely know from the evidence that there was a head-light on the locomotive plainly visible from the crossing, and that all of the witnesses who testify they saw it when the train was approaching the crossing, state that they did not see the gravel cars.

We fail to find in this testimony, or in any of the testimony, anything which will authorize us to hold it conclusively proved that the head-light was sufficient to enable the plaintiff, had he exercised reasonable and proper care and scrutiny, to see the gravel cars and thus become aware of the peril of crossing the track when he attempted to do so. Whether the head-light was sufficient for that purpose is a

question, the answer to which must depend largely upon the inference which may properly be drawn from a variety of facts and circumstances constituting the *res gestæ*. The questions are, really, Did the negligence of the defendant cause, or that of the plaintiff contribute to, the injury complained of? and from their very nature can only be answered by drawing the proper inferences from established facts. To do this is peculiarly the function of the jury. This is the doctrine of *Langhoff v. M. & P. du C. R'y Co.*, 9 Wis., 489, and is believed to be the doctrine of all the cases in this court which involve the question.

It follows that the nonsuit was improperly ordered, and that the circuit court properly vacated it and ordered a new trial.

ORTON, J. I most respectfully dissent from the opinion in this case.

1. The boy had no business with the company, or at its depot, or on its platform, and was there only as an idle spectator "or for fun," waiting to see the train come in, then to pass over the road towards his home.

2. The company owed no duty to the boy more than to any one passing over its road on his own business, at or near its depot or anywhere else on its line.

3. They were not bound to carry a light on the forward end of the gravel car they were engaged in switching near the depot, so far as this boy was concerned, and it was not negligence that they did not do so. Suppose this train and locomotive were pushing platform cars in front from one depot to another, and in the open country, distant from each, a man living in the vicinity attempted to "beat" the train when the head-light of the engine was within less than one hundred feet of him, and to cross over, and he did not see the flat cars in front, and was struck by the forward one when he had taken one step on the track, as in this case,

and was injured, would the law hold the company negligent in not carrying a light on the forward platform car? I think not. If a person attempts to cross the track under such circumstances he does so at his own risk. The company could not anticipate, and is not bound to expect, any such foolhardy attempt. This accident having happened at or near the depot does not make the case differ from the one supposed, for the boy had no connection with the depot or its uses. To impose the duty on the company in respect to anybody and everybody to carry a light on the car being thus pushed for a mere temporary purpose, would make it its duty in all cases of switching of cars to always have a light upon the car pushed ahead of the engine. Can it be said that a head-light does not throw its rays one hundred feet in front, so as to render such a light necessary, and that the law, therefore, makes the absence of one negligence? This case cannot rest upon the negligence of the company in this respect, and this is the only respect in which it is claimed.

4. The boy was grossly negligent and careless: (1) In attempting to cross the track before an approaching train, even though the engine was at that moment nearly one hundred feet distant. It will not do to encourage such a dangerous and adventurous experiment by holding that it was not carelessness. Can it be said, or ought it to be said, that such an act was common prudence? And yet we have to say so by holding that it was not the want of it. Boys are too apt to take such dangerous chances to be encouraged by legal sanction. The fact that this boy might have safely crossed the track in this instance if the gravel cars had not been in front, is not the test of common prudence or the want of it. We do not know whether he could have safely crossed or not. He might have fallen or his foot might have been caught in a frog, which is very common, or in some other narrow place, or some other cause might have inter-

vened while thus running hastily to escape the train. (2) The boy could have seen the forward end of the car *had he looked.* He testified that he did not see it because he was looking at the head-light. It is not possible that an engine head-light does not throw its light over and beyond three flat cars in front, of considerably less than one hundred feet of distance, so that they could not be easily and readily observed by one "looking before leaping" in front of the same. The car caught the boy at about his second step, and had he looked down before he jumped down from the platform of the depot, directly on the track, he must have seen it. Heidkamp, a witness for the plaintiff, testified that the boy was standing talking with him just before he stepped down from the platform, and that he was still standing near the edge of the platform when the car struck the boy, and that he saw it strike him. He said he saw it when he looked, but before he had been looking at the head-light and did not see the car. He testified: "I know he was crossing the west rail, because he only had one more step to go, and he was trying to take that step when he was struck. *I seen his legs* over the west rail, because they were slung up in this manner, [indicating.] *It was light enough to see him, because I watched him when he went over. I had my eyes on him.* I guess it was the head-light *that lit it up;* that was the only light around there. *The head-light lit it up so I could see him.*" This was the most competent witness in the case, and had the best means of knowing the facts. The jury ought not to find against his testimony even if they should be so inclined. This evidence is conclusive that the boy could and would have seen the car almost directly before him had he looked to see where he was jumping, or in that direction. All cases agree that the party *must look, and not looking* is negligence. Here, too, we have positive evidence that the head-light of the engine did throw its light beyond the forward end of the car which struck the boy, and that

that end of the car was seen by one standing in almost the exact place from which the boy jumped. Against this positive evidence all speculation or supposition as to whether the head-light could light up the place so as to be seen, are out of place and weigh nothing.

I speak of the plaintiff as "the boy," but he was twenty years old, and of full judgment and capacity. He was certainly reckless and negligent, and ought not to recover. I think there have been many cases in this court where the plaintiff was less negligent and yet was not allowed to recover. I think the circuit court should not have set aside the nonsuit. The first impression of the learned judge was, in my opinion, correct. On the evidence given, the jury would not be justified in rendering a verdict for the plaintiff, and if they should do so it would be the duty of the court to set it aside.

